IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PATRICK FARLEY, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § § | |
| DHI MORTGAGE COMPANY, LTD., MERSCORP HOLDINGS, INC., MORTGAGE ELECTRONIC REGISTRATIONS SYSTEMS, INC., SWARUPA SLEE, MELANIE COWAN, JUANITA STRICKLAND, BANK OF AMERICA, N.A., RECONTRUST COMPANY, N.A., ARMANDO CHAVEZ, ANGELA CARTER, CORE LOGIC DOCUMENT SOLUTIONS AND MERCEDES JUDILLA, | § § § § § § § § § § § § § | Civil Action No. ___1:13-cv-820___ |
| Defendants. | § § | |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § 1332, 1441(b), Defendants Bank of America, N.A., Mortgage Electronic Registration Systems, Inc., MERSCORP Holdings, Inc. and ReconTrust Company, N.A. (collectively the "Defendants") remove this action from the Travis County 200th Judicial District Court to the United States District Court for the Western District of Texas, Austin Division.

136045.61876/12345073v.1

# I.

## INTRODUCTION

On September 3, 2013, Plaintiff Patrick Farley (the "Plaintiff") filed his Original Petition (the "Petition") against the Defendants under Cause No. D-1-GN-13-003076 in an action styled *Patrick Farley v. DHI Mortgage Company, Ltd., et al.*[1]

# II.

## TIMELINESS AND CONSENT TO REMOVAL

Plaintiff's state court action was filed on September 3, 2013.[2]   This Notice of Removal is therefore timely filed within thirty (30) days of service of process. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) ("[W]e hold that a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service."). Undersigned counsel represents all properly joined Defendants, and all such Defendants consent and join in this removal. *Rico v. Flores*, 481 F.3d 234, 239 (5th Cir. 2007) (stating that only properly joined defendants must consent to removal).

# III.

## VENUE FOR REMOVAL

Venue for this Removal is proper in the U.S. District Court for the Western District of Texas, Austin Division because this district and division includes Travis County, Texas—the location of the pending state court action. 28 U.S.C. § 124(d)(1) (stating that the Austin Division of the Western District includes Travis County).

---

[1]   **Exhibit A-2:** Orig. Pet.

[2]   *Id.* at p. 1.

2

## IV.
### PROCEDURAL REQUIREMENTS

Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers filed in the state court action are attached to this Notice of Removal, including all executed process in the case; all orders signed by the state judge; the docket sheet, an index of matters being filed; and a list of all counsels of record, including addresses, telephone numbers, and parties represented.[3/]  Along with the filing of this Notice of Removal, Defendant is filing a copy of the Notice of Removal with the Travis County 200th Judicial District Court, pursuant to 28 U.S.C. § 1446(d).  Plaintiff <u>has</u> requested a jury trial in the state court action.

## V.
### BASIS FOR REMOVAL: DIVERSITY JURISDICTION

### A.    Complete Diversity Exists.

Plaintiff's state court action may be removed to this Court because it arises under 28 U.S.C. § 1332 (Diversity of Citizenship).  Plaintiff is a citizen and resident of Travis County, Texas, residing at 901 Minturn Lane, Austin, Texas 78748 (the "Property").[4]

Defendant Bank of America, N.A. ("Bank of America") is a national banking association. Bank of America is a citizen of North Carolina under the rules for determining the citizenship of a national banking association because that is the state where its main office is located, as provided in its articles of association. 28 U.S.C. § 1348; *Wachovia Bank v. Schmidt,* 546 U.S. 303, 318 (2006); *see, e.g., Kew v. Bank of Am., N.A.,* No. H-11-2824, 2012 WL 1414978, at *2, n. 2 (S.D. Tex. Apr. 23, 2012) ("Bank of America and BAC are North Carolina citizens."). Accordingly, Bank of America is a citizen of North Carolina.

---

[3]  **Exhibit A:** Index of Matters Filed.

[4]  **Exhibit A-2:** Orig. Pet. at ¶2.

Defendant ReconTrust Company, N.A. ("ReconTrust") is also a national banking association. ReconTrust is a citizen of California under the rules for determining the citizenship of a national banking association because that is the state where its main office is located, as provided in its articles of association. *Id.*; *see Leal v. Bank of New York Mellon*, No. C-12-265, 2012 WL 5465978, at *6 (S.D. Tex. Oct. 22, 2012) ("ReconTrust Company, N.A. is a citizen of California . . . because that is where their main offices are located.").

Mortgage Electronic Registration Systems, Inc. ("MERS") is a corporation existing under the laws of the State of Delaware and maintaining its principal place of business in the State of Virginia. Accordingly, MERS is a citizen of Delaware and Virginia under the rules for determining citizenship of a corporation. *Wachovia Bank, N.A.*, 546 U.S. at 318; *see, e.g., Crear v. JP Morgan Chase Bank, N.A.*, No. 10-10875, 2011 WL 1129574, at *2 (5th Cir. 2011) ("[F]or diversity purposes, [MERS] citizenship is tied to its principal place of business (Virginia) or its state of incorporation (Delaware).").

MERSCORP Holdings, Inc. ("MERSCORP") is a corporation existing under the laws of the State of Delaware and maintaining its principal place of business in the State of Virginia. Accordingly, MERSCORP is a citizen of Delaware and Virginia under the rules for determining citizenship of a corporation. *Id.*

There is complete diversity in this case because no plaintiff is a citizen of the same state as a properly joined defendant. *See* 28 U.S.C. § 1332; *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990).

**B.      The Amount in Controversy Exceeds $75,000.00.**

A court may determine that removal was proper if it is facially apparent from the complaint that plaintiff's claims are likely to be above the jurisdictional amount. *De Aguilar v.*

4

*Boeing Co.,* 11 F.3d 55, 57 (5th Cir. 1993). When a plaintiff does not allege an amount of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy equals or exceeds the jurisdictional amount." *Berniard v. Dow Chemical Co.,* 481 Fed. Appx. 859, 862 (5th Cir. 2010) (citing *De Aguilar,* 11 F.3d at 58)).

Plaintiff's Petition does not allege a specific amount of damages. Rather, Plaintiff seeks, among other things, an injunction preventing a non-judicial foreclosure.[5] The amount in controversy in an action for declaratory or injunctive relief can also be characterized as "the value of the right to be protected or the extent of the injury to be prevented." *Dow Agrosciences LLC v. Bates,* 332 F.3d 323, 326 (5th Cir. 2003); accord *Hartford Ins. Group v. Lou-Con Inc.,* 293 F.3d 908, 910 (5th Cir. 2002); *St. Paul Reins. Co., Ltd., v. Greenberg,* 134 F.3d 1250, 1252-53 (5th Cir. 1998). The Fifth Circuit has consistently applied this principle in the foreclosure context and clarified that "[w]hen the validity of a contract or a right to property is called into question in its entirety, the value of the property controls the amount in controversy." *Nationstar Mortg. LLC v. Knox,* 351 F. App'x 844, 848 (5th Cir. 2009) (applying "right to be protected" standard to cases involving wrongful foreclosure).

The amount in controversy is therefore the fair market value of the Property itself. The fair market value of the Property according to the most recent appraisal by the local taxing authority is at least $169,865.00.[6] It is therefore beyond dispute that the amount in controversy in this case exceeds $75,000.00.

---

[5]    **Exhibit A-2:** Orig. Pet. at ¶87.

[6]    *See* Travis County Appraisal District Summary attached as **Exhibit B**. It is appropriate for the court to take judicial notice of the Travis County Appraisal District Summary because it is a public record and the information it provides is readily ascertainable and the source—the Travis County Appraisal District—cannot reasonably be questioned. FED. R. EVID. 201(b)(2), 803(8); *DTND Sierra Inv., LLC v. Bank of Am., N.A.,* 871 F.Supp.2d 567, 570 (W.D. Tex. May 15, 2012) (considering county tax appraisal records to establish amount in controversy); *see also Funk v. Stryker,* 631 F.3d 777, 783 (5th Cir. 2011).

## VI.

## IMPROPER JOINDER

### A.    Applicable Standard of Review.

The remaining defendants—DHI Mortgage Company, Ltd. ("DHI"), Swarupa Slee, Melanie Cowan, Juanita Strickland, Armando Chavez, Angela Carter, Core Logic Document Solutions ("Core Logic") and Mercedes Judilla[7] (collectively the "Improperly Joined Defendants") have been improperly joined solely in an attempt to destroy diversity.  The fact that Plaintiff lists the Improperly Joined Parties as defendants does not destroy this Court's diversity jurisdiction.

Diversity cases are only removable when "[none] of the parties in interest *properly joined* and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b) (emphasis added); *see Cantor v. Wachovia Mortg. Corp.,* 641 F.Supp.2d 602, 606 (N.D. Tex. 2009).  While complete diversity is required for diversity jurisdiction, such diversity cannot be destroyed by a plaintiff improperly joining a non-diverse defendant. *See, e.g., Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011); *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004).

Improper joinder may be established in one of two ways: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood,* 385 F.3d at 573. In the second situation, which is applicable to this case, a finding of fraudulent joinder is appropriate when "there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that

---

[7]    The face of the Plaintiff's Petition states that Core Logic is a South Carolina corporation and that Mercedes Judilla is an employee of the company located in South Carolina.  While Plaintiff literally asserts no facts pertaining to these two defendants, even if the Court were to consider their citizenships, completely diversity exists from the Plaintiff who is a Texas resident.

136045.61876/12345073v.1

there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant. *Id.* A "mere theoretical possibility of recovery under local law will not preclude a finding of improper joinder." *Id.* at 573 n. 9. In deciding whether a defendant has been improperly joined, the Court should look to the allegations in the plaintiff's live pleading at the time of removal, and conduct a Rule 12(b)(6)-type analysis to determine whether the plaintiff states a claim against the non-diverse defendant. *Id.*

**B.      The Improperly Joined Defendants are Nominal, Unnecessary Parties.**

"A plaintiff's joinder of formal or unnecessary parties cannot defeat diversity jurisdiction and prevent removal." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003); *see also Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980) ("Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy.").

The Improperly Joined Defendants' role in this matter pertain only to limited functions incidental to the origination of Plaintiff's mortgage loan or in their roles as employees or agents of properly named Defendants, with no property interest at stake relative to Plaintiff's request for relief.[8] The Improperly Joined Defendants do not themselves own or service the mortgage at issue in this case and they are not necessary for the court to enter a final judgment consistent with equity and good conscience. *Acosta v. Master Maint. & Constr., Inc.*, 452 F.3d 373, 379 (5th Cir. 2006).

---

[8]      **Exhibit A-2:** Orig. Pet. at ¶¶6-8

136045.61876/12345073v.1

**C.     Defendants Swarupa Slee, Melanie Cowan, Armando Chavez and Angela Carter Have Been Improperly Joined as Employees and Agents of the Properly Named Defendants.**

Swarupa Slee, Melanie Cowan, Armando Chavez and Angela Carter are employees and agents of MERS, Bank of America and ReconTrust, respectively.[9] In fact, Plaintiff's only allegations against these employees relate to their respective roles as employees of the properly joined Defendants.[10]

The Fifth Circuit has concluded that an employee is improperly joined where they are named in a suit, but the Plaintiff fails to allege the following: (1) the employer owes a duty of care to the Plaintiff, (2) the duty was delegated by the employer to the employee, (3) the employee breached the duty by failing to discharge the obligation with the degree of care required by ordinary prudence, and (4) the employee had some personal duty towards the injured plaintiff, breach of which specifically caused the plaintiff's damages. *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed.Appx. 911, 916 (5th Cir. 2009).

There are no such factual allegations set forth in Plaintiff's complaint. Rather, Plaintiff simply adds each individual employee who appeared in any filings related to his mortgage loan in an effort to destroy diversity. Without pleading any facts required by *Anderson*, the employee defendants have been improperly joined and their citizenship should be disregarded.

---

[9]  **Exhibit A-2:** Orig. Pet. at ¶6 ("Defendant Swarupa Slee is . . . an alleged "Vice-President" of Defendants MERS and Merscorp."); ¶7 ("Defendant Melanie Cowan is an alleged "Vice-President" of Defendant Bank of America."); ¶11 ("Defendant Armando Chavez is an alleged Vice President of Bank of America."); ¶12 ("Defendant Angela Carter is a[n] . . . employee of ReconTrust."); ¶37-38 (stating that Juanita Strickland was appointed as Substitute Trustee).

[10]  *Id.* at ¶36 ("Cowan . . . caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee" signed by Cowan *as Vice President of BoA*."); ¶37 (same); ¶42 ("Chavez . . . caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee" signed by Chavez *as Vice President of BoA*.").

136045.61876/12345073v.1

**D.    Juanita Strickland and Angela Carter Have Been Improperly Named in Their Capacity as Substitute Trustees.**

Plaintiff clearly identifies the Juanita Strickland and Angela Carter in their capacities as appointed substitute trustees.[11/] The Texas Property Code provides that "[a] trustee shall not be liable for any good faith error resulting from reliance on any information in law or fact provided by the mortgagor or mortgagee or their respective attorney, agent, or representative or other third party." TEX. PROP. CODE ANN. § 51.007(f) (West 2013) (emphasis added); *Stephenson v. Le Boeuf,* 16 S.W.3d 829, 837–38 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Based on the foregoing, Texas federal courts have recently held that substitute trustees were improperly joined absent sufficient factual allegations of bad faith. *See, e.g., May v. JPMorgan Chase Bank, N.A.,* No. 4:13-CV-201, 2013 WL 4013119, at *2 (E.D. Tex. Aug. 5, 2013) (quoting TEX. PROP. CODE ANN. § 51.007(f)); *Cantor v. Wachovia Mortg., FSB,* 641 F.Supp.2d 602 (N.D. Tex. 2009) (holding that because there were no allegations of any actual statements or representations made by the trustee and no allegations of fraud, the trustee, the only allegedly non-diverse defendant, was fraudulently joined and remand was not warranted)).

Here, the only specific factual allegations involving these substitute trustees state that they were appointed as trustees and then recorded a Notice of Substitute Trustee's Sale.[12/] Plaintiff does not allege any bad faith on the part of either trustee. Accordingly, Juanita Strickland and Angela Carter, joined solely in their capacities as substitute trustees, have been improperly joined and their citizenship should be disregarded for diversity purposes.

---

[11]    *Id.* at ¶¶38, 40 & 43.

[12]    *Id.*

9

### E.    Plaintiff Fails to State a Claim Against DHI.

Defendant DHI is the originating lender for the Plaintiff's mortgage loan.[13] Plaintiff asserts causes of action against DHI for (1) breach of contract, (2) violations of TEX. CIV. PRAC. & REM. CODE ANN. § 12.002, and (3) declaratory relief.[14] The complaint fails to provide any factual support for these claims and there is no reasonable basis to believe Plaintiff can recover from DHI.

#### (1)    Breach of Contract.

Plaintiff alleged that DHI breached the Deed of Trust by attempting to assign it through MERS without authority to do so.[15] However, the express language of the Deed of Trust, which is attached to the Complaint, belies this premise. The Deed of Trust unequivocally states that MERS is the beneficiary as nominee for *DHI and its successors and assigns.*[16] The Deed of Trust goes on to state that MERS holds only legal title to the interest granted in the Deed of Trust and *may take any action required by Lender.*[17]

Texas courts have consistently held that where, as is true here, a Deed of Trust provides for the use of MERS, those provisions are enforceable to the extent set forth in the documents. *See Campbell v. Mortgage Elec. Registration Sys.,* No. 03–11–00429–CV, 2012 WL 1839357 (Tex. App.—Austin May 18, 2012, pet. filed) (mem. op.) (citing *Athey v. Mortgage Elec. Registration Sys.,* 314 S.W.3d 161, 166 (Tex. App.—Eastland 2010, pet. denied)); *Bierwirth v. BAC Home Loans Servicing, L.P.,* No. 03-11-00644-CV, 2012 WL 3793190, at *3-5 (Tex.

---

[13]    *Id.* at ¶16.

[14]    *Id.* at ¶71-84.

[15]    *Id.* at ¶76.

[16]    Deed of Trust at p. 2. The Deed of Trust is attached to the Complaint as Exhibit 2.

[17]    *Id.*

136045.61876/12345073v.1

App.—Austin Aug. 30, 2012, no pet.). Accordingly, Plaintiff's breach of contract claim against DHI fails the 12(b)(6) standard.

(2)    Violations of TEX. CIV. PRAC. & REM. CODE ANN. § 12.002.

Plaintiff's allegations that DHI and the other Improperly Joined Defendants filed a fraudulent lien against the Property fails the 12(b)(6) standard for multiple reasons. First and foremost, the factual allegations pertaining to this claim are purely conclusory. Plaintiff simply states that the various Improperly Joined Defendants "caused to be filed" certain documents, that the documents are fraudulent and that they were filed with intent.[18] Plaintiff provides absolutely no factual allegations to support these contentions. As purely conclusory allegations are given no weight under the 12(b)(6) standard, Plaintiff cannot demonstrate a possibility of success against DHI or the other Improperly Joined Defendants on this cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Additionally, the only documents that the Improperly Joined Defendants are alleged to have "caused to be filed" are an assignment of a deed of trust and an appointment of substitute trustee.[19] Neither of these documents is a "lien" as defined under §12.001. *See Marsh v. JPMorgan Chase Bank, N.A.,* 888 F.Supp.2d 805, 813 (W.D. Tex. Aug. 29, 2012), *but see Bernard v. Bank of Am., N.A.,* 2013 WL 441749 (Tex. App.—San Antonio Feb. 6, 2013, no pet. h.).

Accordingly, because the assignment and appointment are not "liens" and Plaintiff has failed to plead any actual facts supporting the other elements of this claim,[20] there is no

---

[18]    **Exhibit A-2:** Orig. Pet. at ¶¶32-43, 83-84

[19]    *Id.* at ¶¶32-43

[20]    Liberally construing the Plaintiff's complaint, the only factual basis alleged to establish that the filings were "fraudulent" is that they occurred after the allegedly unauthorized assignment of the

11

possibility of recovery against the Improperly Joined Defendants. *See Nguyen v. Fed. Nat. Mortg. Ass'n*, --- F.Supp.2d ---, 2013 WL 3937030, at *9-10 (S.D. Tex. Jul. 30, 2013).

(3)   Declaratory Relief.

Finally, DHI is named in Plaintiff's request for declaratory relief.[21]   Plaintiff asks the Court to declare that "there is no valid assignment or transfer of interest from DHI to BoA by virtue of the assignment of the Deed of Trust by MERS."[22]   As addressed above, the Deed of Trust expressly provides for the use of MERS and states that it may take an action required by the Lender or its successors and assigns.   Texas and federal courts have consistently held that, under such circumstances, assignments by MERS are proper. *See, e.g., Casterline v. OneWest Bank, F.S.B.*, --- Fed. Appx. ---, 2013 WL 3868011, at *3 (5th Cir. 2013) ("MERS had the authority to transfer the Security Instrument together with the power to foreclose to another party.").   Accordingly, no justiciable controversy exists as to MERS' authority to transfer the Deed of Trust and Plaintiff fails to state a claim against DHI.

**F.   Plaintiff Fails to State a Claim Against the Improperly Joined Defendants for Tortious Interference with Contract.**

In Texas, to prevail on a claim for tortuous interference with contract, a plaintiff must show: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred." *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, F.3d 849, 864 (5th Cir. 2004) (citation omitted).   True to form, Plaintiff conclusively states that he had a contract with DHI and MERS (the "Deed of Trust") and that the Improperly Joined Defendants all tortuously interfered with

---

Deed of Trust.   However, as addressed *supra*, the Deed of Trust expressly authorized MERS to assign the Deed of Trust.

[21]   *Id*. at ¶¶71-73.

[22]   *Id*. at ¶72.

12

that contract.  Plaintiff provides no factual support for this claim and every allegation pertaining to the Improperly Joined Defendants is expressly authorized by the Deed of Trust.[23/]

## VII.
### CONCLUSION

In a poorly disguised attempt to destroy diversity jurisdiction, Plaintiff has needlessly sued the Improperly Joined Defendants in this action and asserts claims against them that are baseless, implausible and have no chance of success.  For the reasons stated herein, the Court should disregard the citizenship of the Improperly Joined Defendants for diversity purposes.

Having satisfied the requirements for removal under 28 U.S.C. §§ 1332 and 1441(b) Defendants give notice that Cause No. D-1-GN-13-003076, now pending in the Travis County 200th Judicial District Court, has been removed to this Court.

Respectfully submitted,

By: _/s/ Joshua A. Huber_
    Joshua A. Huber
    Texas Bar No. 24065457
    Federal Bar No. 1001404
    BLANK ROME LLP
    700 Louisiana, Suite 4000
    Houston, Texas 77002-2727
    Telephone: (713) 632-8640
    Facsimile:  (713) 228-6605
    jhuber@blankrome.com

**Of Counsel:**
Blank Rome LLP
700 Louisiana, Suite 4000
Houston, Texas 77002-2727
Telephone: (713) 228-6601
Facsimile:  (713) 228-6605

**ATTORNEY FOR DEFENDANTS**

---

[23] Deed of Trust at p 2 (authorizing MERS to assign); p. 7 (authorizing appointment of substitute trustee); p. 7 (stating that Lender must record a notice of substitute trustee's sale.).

13

136045.61876/12345073v.1

## CERTIFICATE OF SERVICE

I certify that on September 16, 2013, a true and correct copy of the foregoing and/or attached instrument was sent to the District Clerk of Travis County, Texas, and that notice was served on all parties of record pursuant to the Federal Rules of Civil Procedure, as indicated below:

Stephen Casey
CASEY LAW OFFICE, P.C.
600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
*Via CM RRR No. 7011 0470 0003 0560 8789*

_/s/ Joshua A. Huber_
Joshua A. Huber

136045.61876/12345073v.1

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PATRICK FARLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| DHI MORTGAGE COMPANY, LTD., | § | |
| MERSCORP HOLDINGS, INC., | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATIONS SYSTEMS, INC., | § | Civil Action No. 1:13-cv-820 |
| SWARUPA SLEE, MELANIE COWAN, | § | |
| JUANITA STRICKLAND, BANK OF | § | |
| AMERICA, N.A., RECONTRUST | § | |
| COMPANY, N.A., ARMANDO CHAVEZ, | § | |
| ANGELA CARTER, CORE LOGIC | § | |
| DOCUMENT SOLUTIONS AND | § | |
| MERCEDES JUDILLA, | § | |
| | § | |
| Defendants. | § | |

## INDEX OF MATTERS BEING FILED

| EXHIBIT | DOCUMENT | DATE FILED IN STATE COURT |
|---|---|---|
| A. | Index of All Matters Being Filed | N/A |
| A.1 | Travis County Docket Sheet | N/A |
| A.2 | Plaintiff's Original Petition, Request For Temporary Relief, and Request for Declaratory Relief | 09/03/13 |
| A.3 | Temporary Restraining Order | 09/03/13 |
| A.4 | Defendant's Original Answer | 09/11/13 |
| A.5 | Plaintiff's letter to Court re' TRO Writ | 09/11/13 |
| B. | Harris County Appraisal District Summary | N/A |

136045.61876/12346675v.1

C.      Counsel of Record               09/16/13

D.      State Court Notice         09/16/13

136045.61876/12346675v.1

# Exhibit A1

| Filed Date | Category | Description | Additional Info |
|---|---|---|---|
| 9/11/2013 | ANS-RESP | ORIGINAL ANSWER | DEFENDANTS BANK OF AMERICA NA RECONTRUST COMPANY NA AND MERSCORP HOLDINGS INC AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC'S ORIGINAL ANSWER |
| 9/11/2013 | OTHER ... | LETTER | LETTER REQUESTING TRO ISSUANCE |
| 9/3/2013 | PET-PL ... | ORIGINAL PETITION/APPLICATION | PLAINTIFF'S ORIGINAL PETITION, REQUEST FOR TEMPORARY RELIEF, AND REQUEST FOR DECLARATORY RELIEF ... |
| 9/3/2013 | ORD ... | ORD:TEMPORARY RESTRAINING ORD | TEMPORARY RESTRAINING ORDER |

# Exhibit A2

Filed
13 September 3 A10:24
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-13-003076

No. D-1-GN-13-003076

| | |
|---|---|
| Patrick Farley,<br>*Plaintiff* ,<br><br>vs.<br><br>DHI Mortgage Company, Ltd.; Merscorp<br>Holdings, Inc.; Mortgage Electronic<br>Registration Systems, Inc.; Swarupa Slee;<br>Melanie Cowan; Juanita Strickland;<br>Bank of America, N.A.; Recontrust<br>Company, N.A.; Armando Chavez;<br>Angela Carter; Core Logic Document<br>Solutions; and Mercedes Judilla;<br>*Defendants.* | In the 200th District Court<br>Travis County, Texas<br><br><br>Plaintiff's Original Petition, Request for<br>Temporary Relief, and<br>Request for Declaratory Relief |

To the Honorable Judge of Said Court:

Now Comes Patrick Farley, ("Plaintiff"), complaining of and about DHI Mortgage Company, Ltd; Merscorp Holdings, Inc. ("Merscorp"); Mortgage Electronic Registration Systems, Inc. ("MERS"); Swarupa Slee ("Slee"); Melanie Cowan ("Cowan"); Juanita Strickland ("Strickland"); Bank of America, N.A. ("BoA"); ReconTrust Company, N.A. ("ReconTrust"); Armando Chavez ("Chavez"); Angela Carter ("Carter"); Core Logic Document Solutions ("Core Logic"); and Mercedes Judilla ("Judilla"); hereinafter referred to as "Defendants," and for cause of action would show unto the Court the following:

### Discovery Control Plan Level

1.   Pursuant to Rule 190.1 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery in this case under Level 2.

### Parties and Service

2.   Plaintiff Patrick Farley own the house at 901 Minturn Lane, Austin, Texas 78748, in Travis County, Texas.

3.   Defendant DHI Mortgage Company, Ltd., is a for-profit corporation in the State of Texas. It maintains a place of business at 2554 Riata Vista Circle, First Floor, Austin, Texas

78727. It may be served with process by serving its registered agent, C T Corporation Systems, 350 N. St. Paul St., Dallas, TX 75201-4324

4. Defendant Merscorp Holdings, Inc. ("Merscorp"), is a Delaware corporation that maintains it principal place of business at 1818 Library Street, Suite 300, Reston, Virginia 20190. Merscorp engages in business in Travis County, Texas, but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of Merscorp's business done in this state. Merscorp may be served with citation by serving: Bill Beckmann, President and Chief Executive Officer, Merscorp Holdings, Inc. 1818 Library Street, Suite 300 Reston, Virginia 20190.

5. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a Delaware corporation and wholly-owned subsidiary of Defendant Merscorp. MERS engages in business in Travis County, Texas, but does not maintain a regular place of business in this state or a designated agent for service of process for proceedings that arise out of MERS' business done in this state. MERS may be served with citation by serving: Bill Beckmann, President and Chief Executive Officer, Mortgage Electronic Registration Systems, Inc., 1818 Library Street, Suite 300, Reston, Virginia 20190.

6. Defendant Swarupa Slee is, by information and belief from signature on the documents in this case, an alleged "Vice-President" of Defendants MERS and Merscorp. She can be served with citation at the place of business of MERS for which she serves as "Vice-President": 1818 Library Street, Suite 300, Reston, Virginia 20190.

7. Defendant Melanie Cowan ("Cowan") is an alleged Vice President of Defendant Bank of America. She can be served with process through the company for whom she serves as "Vice President," Defendant Bank of America, at Bank of America's corporate address, 400 National Way, Simi Valley, CA 93065.

8. Defendant Juanita Strickland is a resident of Texas and participated in false filings in this case. She may be served with process at 130 Encino Loma, Killeen, TX 76542.

9. Defendant Bank of America, N.A. ("BoA"), is a for-profit corporation registered to do business in the State of Texas. It maintains its corporate office in North Carolina. It may

be served with process by serving its registered agent, C T Corporation Systems, 350 N. St. Paul St., Dallas, TX 75201-4324.

10. Defendant, Recontrust Company, N.A. ("ReconTrust"), has, upon information and belief no filings with the Texas Secretary of State authorizing it to do business. Its listed address on correspondence with Plaintiff is 2380 Performance Drive, Richardson, TX 75082, and service of process may be effected upon this Defendant by serving it at this address through the registered agent of the corporation or its attorneys of record

11. Defendant Armando Chavez ("Chavez") is an alleged Vice President of Defendant Bank of America. He can be served with process through the company for which he serves as "Vice President," Defendant Bank of America, at Bank of America's corporate address, 400 National Way, Simi Valley, CA 93065.

12. Defendant Angela Carter ("Carter") is by information and belief a Texas resident and employee of ReconTrust. She can be served with process at the ReconTrust headquarters at 2380 Performance Drive, Richardson, TX 75082.

13. Defendant Core Logic is a company in South Carolina. A search for it on the South Carolina Secretary of State website did not reveal any registered agent. Process may be effected at its business address, 450 E. Boundary Street, Chapin, SC, 29036.

14. Defendant Mercedes Judilla ("Judilla") purports to be, by information and belief, an employee of CoreLogic, and can be served at her place of employment, CoreLogic, 450 E. Boundary Street, Chapin, SC, 29036.

Jurisdiction and Venue

15. The subject matter in controversy is within the jurisdictional limits of this Court. This Court has personal jurisdiction because the property that is the subject of this litigation is located in Texas and Defendants are doing business within this state. Venue in this cause is proper in Travis County, Texas pursuant to Section 17.56 of the Texas Business and Commerce Code and under Section 15.001 of the Texas Civil Practice and Remedies Code because this action involves real property, and the property is located in Travis County, Texas.

Facts

16. Plaintiff is the owner of the property at 901 Minturn Lane, Austin, Texas 78748, in Travis County, Texas. The transaction at the root of this case was closed on or about November 10, 2009, whereupon Plaintiff, in order to purchase the subject property executed a promissory note, payable to the original "Lender," DHI. *See* Exh. 1.

17. Plaintiff made a promissory note between him and DHI on November 10, 2009. No other defendant was party to the promissory note nor authorized to collect on such note.

18. No other definition of Lender exists on the Note. At the time, the subject property was Plaintiffs' homestead property.

19. Plaintiff, DHI, and MERS contractually agreed to a Deed of Trust. *See* Exh. 2.

20. The Deed of Trust defines Lender as "DHI Mortgage Company, Ltd.," which solely refers to Defendant DHI. Lender does not include any other party as identified on the Deed of Trust. See Exh. 2.

21. Plaintiff was paying regularly on the home until he became unemployed because of company downsizing in 2011. He began drawing unemployment for six (6) months at that time.

22. He soon found another job, received a reinstatement calculation from Defendant BoA, no realizing that BoA was wrongfully representing itself as the holder of his Note.

23. After the three-month mark the Note was in default. At that time the Lender, DHI, or MERS, could foreclose and sell the property per the Deed of Trust or DHI could sue on the Note to collect the debt.

24. Once the Note went into default only full reinstatement would be accepted; however, Plaintiff was offered a "loan modification."

25. Plaintiff spoke with approximately ten (10) different representatives during this time. BoA lost Plaintiff's paperwork *multiple times*.

26. Having sent the documents in several times and having been told several times the documents were lost, Defendant BoA engaged in a pattern of fraudulent behavior upon which Plaintiff relied by virtue of the available funds for him through the Home Affordable Modification Program, ones to which he was denied.

27. Prior to the HAMP modification attempt, Defendant BoA engaged in acts of waiver and other actions which prohibited it, by consent or estoppel, from denying Plaintiff his ability to pay on the home loan.

28. This pattern of behavior constitutes common law fraud in which statements were made and a pattern of conduct was made to cause Plaintiff to rely upon such statements. Such actions have been documented in multiple national lawsuits. *See http://www.huffingtonpost.com/2012/03/07/gregory-mackler-whistleblower-bank-of-america_n_1328381.html; see also* http://www.cnbc.com/id/100818866 (which describes how multiple employees of Defendant Bank of America were paid to "lose" paperwork and cause homeowners to reapply even though they had sent in all the paperwork, delaying review of paperwork that had been received, and ).

29. Defendant Bank of America engaged in similar fraud here, by way of reference to the actions engaged in by Defendant Bank of America and detailed similarly in Case No. 1:11-CV-03270-SLT-RLM, *Mackler v. Bank of America*, which describes the massive fraud put upon homeowners seeking modification through HAMP with Defendant Bank of America.

30. Consistent with this ignoring of Plaintiff's participation in the program, and upon information and belief, part of this fraud was to deceptively induce Plaintiff to engage Defendant Bank of America in the HAMP process

31. Plaintiff consistently paid the first two (2) monthly payments.

32. Prior to the third payment, on November 2, 2011, Defendants DHI, Slee, MERS, Merscorp, Core Logic, Judilla, and BoA caused to be filed in the Travis County property records an alleged "Assignment of Deed of Trust." The alleged assignment, while titled only as an attempt to assign the deed of trust, purports to also assign the promissory note, stating it assigns "all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest . . . ."

33. This fraudulent assignment demonstrated that Defendant BoA had no intention of permitting Plaintiff to complete the HAMP program.

34. MERS, in this assignment, has no interest in the Note and no right to assign the Note under the Deed of Trust, and is limited, if anything, to those items mentioned in the Deed of Trust, which is to release or cancel the Deed of Trust or foreclose and sell the property. It is simply without actual contractual authority that MERS purported to act in this capacity.

35. Any actions taken by Defendant BoA subsequently are void as BoA is not a party to the Note and has no contractual right to collect under the Note.

36. On May 24, 2012, December 19, 2011, Defendants ReconTrust, Cowan, and BoA caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee," signed by Cowan as Vice President of BoA. This filing absent authority is void. This filing was not made in the context of litigation.

37. On June 1, 2012, Defendants ReconTrust, Cowan, and BoA caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee," signed by Cowan as Vice President of BoA. This filing absent authority is void. It names as an alleged appointee Juanita *Stricklor.* This person, "Juanita Stricklor," does not appear on any other later documents. This filing was not made in the context of litigation.

38. On June 11, 2012, Defendants ReconTrust, BoA and Strickland caused to be filed in the Travis County property records an alleged "Notice of Substitute Trustee Sale," signed by Strickland this date, to the present, no assignment of the Note or Deed of Trust has been made or recorded by information and belief. This filing was not made in the context of litigation.

39. "Lender or Trustee" are the parties permitted under the Deed of Trust to give notice of sale by posting; "Lender" shall mail copy of notice to borrower. This did not happen as no negotiation to DHI was ever identified.

40. On July 16, 2012, Defendants ReconTrust, BoA, and Strickland caused to be filed in the Travis County property records an alleged "Notice of Substitute Trustee Sale," signed by Strickland this date, to the present, no assignment of the Note or Deed of Trust has been made or recorded by information and belief. This filing was not made in the context of litigation.

41. On September 10, 2012, Defendants Recontrust, BoA, and Strickland caused to be filed in the Travis County property records an alleged "Notice of Substitute Trustee Sale," signed by Strickland. This filing was not made in the context of litigation.

42. On July 23, 2013, Defendants Recontrust, Chavez, and BoA caused to be filed in the Travis County property records an alleged "Appointment of Substitute Trustee," signed by Chavez as Vice President of BoA. This filing absent authority is void.

43. On August 12, 2013, Defendants Recontrust, Carter, and BoA caused to be filed in the Travis County property records an alleged "Notice of Substitute Trustee Sale," signed by Carter. This filing was not made in the context of litigation.

A.    Claims

Void Foreclosure

44. Plaintiff re-alleges and incorporate by reference the foregoing allegations.

45. Texas law follows the common law rule where a debtor may bring any ground against an assignee to challenge an assignment as void or invalid. *See Tri-Cities Const., Inc. v. American Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App.—Houston [1st Dist.] 1975, no writ); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App.—San Antonio 1959, writ ref'd n.r.e.). This was recently acknowledged by the federal 5th Circuit, and is the majority rule followed in Texas. *See Reinagel, et al. v. Deutsche Bank Nat'l Trust Co.*, No. 12-50569, 2013 U.S. App. LEXIS 14089 (5th Cir. (Tex.) July 11, 2013) (reversing district court, Hon. Sam Sparks, on this point of law);

46. Texas Courts also permit challenging the chain of assignments regarding the right of a party to foreclose. *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937 (Tex. App.—Austin 1996); *see also Martin v. New Century Mortgage Co.*, 2012 Tex. App. LEXIS 4705 (Tex. App.—Houston [1st Dist.] 2012); *Austin v. Countrywide Home Loans*, 261 S.W.3d 68 (Tex. App.—Houston [1st Dist.] 2008); *Leavings v. Mills*, 175 S.W.3d 301 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shepard v. Boone*, 99 S.W.3d 263 (Tex. App.—Eastland 2003).

47. Federal law permits these challenges, too. *See Washington v. JP Morgan Chase*, 2013 U.S. Dist. LEXIS 22735 (W.D. Tex. 2013) (citing to Texas law); *Routh v. Bank of Am., N.A.*, 2013

U.S. Dist. LEXIS 14344 (W.D. Tex. 2013) (same); *Miller v. Homecomings*, 881 F. Supp. 2d 825 (S.D. Tex. 2012) (same, and collecting cases); *Millett v. JP Morgan Chase, N.A.*, 2012 U.S. Dist. LEXIS 40890 (W.D. Tex. 2012) (same); *McCarthy v. Bank of America, N.A.*, 2011 U.S. Dist. LEXIS 147685 (N.D. Tex. 2011) (same); *Norwood v. Chase Home Fin. LLC*, 2011 U.S. Dist. LEXIS 5147 (W.D. Tex. 2011) (same).

48. The note has not been assigned ever.

49. As the Note has never been assigned, no debt passed. Any attempt at foreclosure by anyone other than the original note holder is void.

50. All actions of persons attempting to notice foreclosure sale, appoint substitute trustees, and sell the property are void.

51. "The course marked out for the trustee to pursue must be strictly followed by him for the method of enforcing the collection through such deeds is a harsh one. The grantor of the power is entitled to have his directions obeyed; to have the proper notice of sale given, to have it to take place at the time and place, *and by the person appointed by him.*" *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887) (emphasis added; *see also University Savings Assoc. v. Springwood Shopping Center*, 644 S.W.2d 705 (Tex. 1982; *Slaughter v. Qualls*, 139 Tex. 340 (Tex. 1942); *Ford v. Emerich*, 343 S.W. 2d 527, 531 (Tex. App.—Houston 1961, writ ref'd n.r.e.); *Faine v. Wilson*, 192 S.W. 2d 456, 458 (Tex. App.—Galveston 1946); *Murchison v. Freeman*, 127 S.W. 2d 369, 372 (Tex. App.—El Paso 1939, writ ref'd) (the terms of a deed of trust are strictly construed).

52. Any irregularity making the act void passed *no* title. *Henke v. First Southern Properties, Inc.*, 586 S.W. 2d 617, 620 (Tex. App.—Waco 1979, writ ref'd n.r.e.). Texas is a lien theory state, which means title remains in the hands of the homeowner. *Taylor v. Brennan*, 621 S.W.2d 592, 593 (Tex. 1981).

53. In *University Savings Assoc. v. Springwood Shopping Center*, 644 S.W.2d 705 (Tex. 1982), the court opined:

> Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed. *Slaughter v. Qualls*, 139 Tex. 340, 162 S.W.2d 671 (1942); *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917). As this Court has stated, "[a] trustee has no power to sell the debtor's property, except such as may be found in the deed of trust." *Slaughter v. Qualls*, supra at 675. Thus, when a foreclosure sale is held pursuant to

the power granted in the deed of trust, the power of sale can only be exercised by those authorized in the instrument. Michael v. Crawford, supra. The reason that "strictness" is required in following the terms of the power granted by the deed of trust is to protect the property of the debtor. Walker v. Taylor, 142 S.W. 31, 33 (Tex. Civ. App. -- San Antonio 1911, writ ref'd). Failure to follow the terms of the deed of trust will give rise to a cause of action to set aside the trustee's deed. Slaughter v. Qualls, supra.

Id. at 706.

54. The strict construction of the Deed of Trust may seem harsh. The strict construction, though, does not leave the lender without remedies. The lender may sue on the note and seek a judicial order of foreclosure. It is only the contractual remedy of non-judicial foreclosure that is lost by the lender's failure to abide by the contract. In addition to the general rule that any ambiguity in a contract must be construed against the drafter (here, the lender), the rule of strict construction of Deeds of Trust has been firmly ensconced in Texas law for over a century. Slaughter v. Qualls, 139 Tex. 340 (Tex. 1942). A trustee's power to sell note and deed of trust at foreclosure arises from the language of the particular deed of trust. See, e.g., Winters v. Slover, 251 S.W. 2d 726 (Tex. 1952); Ford v. Emerich, 343 S.W. 2d 527, 531 (Tex. App. – Hous. 1961, writ ref'd n.r.e). A trustee has no power to sell the debtor's note and deed of trust except such as may be found in the deed of trust, and the powers therein conferred must be strictly followed. Slaughter v. Qualls, 162 S.W. 2d 671, 675 (Tex. 1942); Faine v. Wilson, 192 S.W. 2d 456, 458 (Tex. App. – Galveston 1946); Murchison v. Freeman, 127 S.W. 2d 369, 372 (Tex. App. – El Paso 1939, writ ref'd) (the terms of a deed of trust are **strictly construed**). If the trustee conducting a foreclosure sale has no power or authority to offer the note and deed of trust for sale, or if there exists a defect or irregularity in the foreclosure process that would render the foreclosure sale void, then the purchaser at foreclosure cannot acquire title to the note and deed of trust. Henke v. First Southern Properties, Inc., 586 S.W. 2d 617, 620 (Tex. App. – Waco 1979, writ ref'd n.r.e.). In other words, if the conditions and limitations on the trustee's power to sell a note and deed of trust at foreclosure, as set forth in the deed of trust, were never fulfilled, then the trustee's power to sell never lawfully came into being, and the foreclosure sale and trustee's deed are void. Slaughter v. Qualls, 162 S.W. 2d 671, 675 (Tex. 1942). The trustee must strictly adhere to the terms of the power for the power

"admits of no substitution and no equivalent." *Michael v. Crawford*, 108 Tex. 352, 193 S.W. 1070 (1917). There are few examples of Texas law that are clearer or better established. In *Fuller v. O'Neal*, 69 Tex. 349, 6 S.W. 181 (1887) the Texas Supreme Court wrote: "The course marked out for the trustee to pursue must be strictly followed by him for the method of enforcing the collection through such deeds is a harsh one. The grantor of the power is entitled to have his directions obeyed; to have the proper notice of sale given; to have it to take place at the time and place, and by the person appointed by him."

55. Furthermore, as the 5th Circuit explained one month ago: "Texas courts have not 'expressly adopted' the *Restatement's* note-follows-the-mortgage presumption precisely because longstanding United States Supreme Court and Texas precedent *requires* that a foreclosing party be the holder of the promissory note in order to foreclose." *Reinagel v. Deutsch Bank National Trust Company*, 2013 U.S. App. LEXIS 14089 (5th Circuit (Tex.) July 11, 2013) (Graves, J., concurring; quoting *Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity.")).

56. This has been Texas law for more than 150 years. *See Duty v. Graham* 12 Tex. 427 (1854) ("The assignment of the interest of the mortgagee in the land, without an assignment of the debt, is considered to be without meaning or use."). The clear law runs unchanged through January 2012. *See Robeson v. Mortgage Elec. Registration Sys.*, 2012 Tex. App. LEXIS 137, slip op. at 15-16 (Tex. App.—Fort Worth Jan. 5, 2012) ("A mortgage typically follows the note it secures. *Gilbreath v. White, 903 S.W.2d 851, 854 (Tex. App.--Texarkana 1995, no writ); J.W.D., Inc. v. Federal Ins. Co., 806 S.W.2d 327, 329-30 (Tex. App.--Austin 1991, no writ); Lawson v. Gibbs, 591 S.W.2d 292, 294 (Tex. Civ. App.--Houston [14th Dist.] 1979, writ ref'd n.r.e.).*") (emphasis added within the string citation).

57. Plaintiffs claim all damages, either liquidated or unliquidated, arising out of this action, in that his title has been clouded, his credit affected, his ability to accurately deal with the true mortgagee of his Note has been damaged, and he has experienced mental anguish over this wrongful activity of Defendants.

Common law and statutory fraud

58. Plaintiffs re-allege and incorporate by reference the foregoing allegations.

59. Defendant Bank of America both (1) misrepresented a past or existing fact—that his paperwork was lost, and (2) made a promise to do a future—that his paperwork would be faithfully reviewed. This involved a modification to their home loan, which is a real estate transaction.

60. Both promises were made for the purpose of inducing Plaintiff to engage in the HAMP program; however, Defendant Bank of America had no intention to do this act.

61. Plaintiff demands all damages, both statutory and at common law, either liquidated or unliquidated, including attorney's fees, for this fraud.

62. Defendants' conduct amounted to a false representation to Plaintiff and has caused a cloud on Plaintiff's title.

63. Defendants made the false representations knowing they were false.

64. Defendants made the false representation recklessly, as a positive assertion, and without knowledge of its truth.

65. Plaintiff seeks unliquidated damages within the jurisdiction of this Court.

66. Plaintiff's injury resulted from Defendants' purposeful fraud or malice, which entitles Plaintiff to exemplary damages under Texas Civil Practice & Remedies Code Section 41.003.

Violations of Texas Finance Code and TDCA

67. Plaintiff re-alleges and incorporate by reference the foregoing allegations.

68. Defendants have provided no evidence that they are in entitled to foreclose as there is not a clear chain of title. These actions are thereby fraudulent, deceptive, and / or misleading representations actionable under the Texas Finance Code §§ 392.303 and 392.304, the Texas Debt Collection Act ("TDCA"). Defendants are in violation of Texas Finance Code §§ 392.301(8), therefore having no authority to collect on the mortgage. All alleged transfers, assignments, and misstatements of facts regarding the mortgage by Defendants, made under void circumstances, constitute violations of the Texas Finance Code.

69. Plaintiff claims all damages, either liquidated or unliquidated, arising out of this action in that his ability to retain his home has been affected and title to his home has been clouded.

## Suit to Quiet Title

70. Plaintiff claims herein that the chain of title to the Property is clouded due to the lack of a proper assignment of the Note. As Texas is a lien theory state, title rests with Plaintiffs and thus he has a superior claim and right to title as opposed to Defendant BoA or Recontrust. Being the party who can challenge an assignment void under Texas law, the burden is on Defendants, once challenged, to prove the chain of title. Absent such proof, Plaintiff's title stands and should be quieted in their name as Defendants' collective actions clouded the title and it is no longer marketable. Plaintiff seeks a decree quieting title to the Property with title fully vested in the Plaintiff based upon the superiority of his title interest as compared with Defendants, who have no clear chain of title

## Declaratory Judgment

71. Pursuant to Chapter 37 of the Texas Civil Practices & Remedies Code, Plaintiff seeks declaratory relief, for the Court to declare that the documents identified in ¶¶ 37-46, *supra*, are void and of no effect.

72. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiff seeks declaratory relief to establish the claims and interests in the subject property. In making its determination, Plaintiff request that the Court find that there is no valid assignment or transfer of interest from DHI to BoA by virtue of the assignment of the Deed of Trust by MERS.

73. Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, Plaintiff seeks declaratory relief to establish that all documents subsequent to the assignment by MERS from DHI to BoA are without authority.

## Breach of Contract

74. Plaintiff re-alleges and incorporate by reference the foregoing allegations.

75. On 11/10/09, Plaintiff and Defendants DHI and MERS executed a valid and enforceable written contract. Plaintiff attaches a copy of the contract as Exhibit 2 and incorporates it

by reference. The contract provided that Plaintiff would grant certain powers to Defendants DHI and MERS to be exercised in the manner listed should Plaintiff default. Possible default on the Note is contemplated in the contract and the remedies in the Deed of Trust are exclusively listed and strictly construed by agreement of Plaintiff, DHI, and MERS.

76. Defendant DHI and MERS actions in attempting to assign the Deed of Trust by MERS absent authority is a breach of that contract.

77. Defendant's breach caused injury to plaintiff, which resulted in the following damages: losing the home via void sale at a foreclosure proceeding, mental anguish, and all consequential damages.

Tortious Interference with Contract

78. Plaintiff had a valid contract with DHI and MERS.

79. Defendants Defendants Slee, Cowan, Strickland, BoA, Recontrust, Chavez, Carter, Core Logic, and Judilla knew or had reason to know of plaintiff's contract with DHI and MERS and plaintiff's interest in the contract. Plaintiff contracted with DHI and MERS specifically for those allowed actions within the Deed of Trust. *See* Exh. 2.

80. Defendant willfully and intentionally interfered with plaintiff's contract with DHI and MERS by their actions in violation of the Deed of Trust in pursing a void foreclosure for which they had no authority.

81. Defendant's interference proximately caused injury to plaintiff, which resulted in the following actual damage or loss: loss of the home at a void foreclosure sale; mental anguish, and all consequential damages still accruing from the actions of Defendants.

82. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

Violation of CPRC § 12.002

83. Texas Civil Practices & Remedies Code Section 12.002 reads:

Sec. 12.002. LIABILITY. (a) A person may not make, present, or use a document or other record with:

(1)   knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2)   intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3)   intent to cause another person to suffer:

(A)   physical injury;

(B)   financial injury;  or

(C)   mental anguish or emotional distress.

84.   By filing the documents ¶¶ 32-43, *supra*, each Defendant who caused a filing to be falsely made acted with intent. As Defendants should be aware of the consequences, thus, the filings were made knowingly and with intent. *See Hernandez v. Vanderbilt Mortg. and Finance, Inc.*, 2010 WL 3359559, at *4 (S.D. Tex. Aug. 25, 2010) ("Texas courts have interpreted the 'intent' element to require only that the person filing the fraudulent lien be aware of the harmful effect that filing such a lien could have") (citing *Taylor Elec. Services, Inc. v. Armstrong Elec. Supply Co.*, 167 S.W.3d 522, 531–32 (Tex.App.—Ft. Worth 2005, no pet.))

Accounting

85.   Plaintiff requests an order for an accounting of all transactions on this mortgage loan. An accounting is necessary in order to determine whether the payment obligation on the original note has in fact been satisfied; also, to determine which entity (or investor) is the legitimate holder of Plaintiff's loan.

Request for Temporary Relief

86.   Plaintiff's harm is imminent to his homestead. Unless this Honorable Court maintains the *status quo* pending the resolution of this suit and restrains the Defendants from foreclosing Plaintiff from the subject property during the pendency of this cause, Plaintiff

will suffer immediate and irreparable injury, for which there is no adequate remedy at law to give Plaintiff complete, final and equal relief. More specifically, Plaintiff will show unto the court the following: (a) the harm to Plaintiff is imminent because Plaintiff will lose their property; (b) there is no adequate remedy at law which will give Plaintiff complete, final and equal relief if the Temporary Restraining Order is not granted and any transfer of the property is allowed to take place; (c) Plaintiff has met the burden by establishing each element, which must be present before injunctive relief can be granted by this Court, therefore Plaintiff is entitled to the requested Temporary Injunction.

87. Plaintiff requests this Honorable court to enjoin the Defendants from foreclosing against Plaintiff, selling, evicting, or otherwise taking possession of the subject property during the pendency of this cause, or from otherwise disturbing or attempting to disturb Plaintiff's peaceable possession and enjoyment of the property because (1) they had no standing to foreclose, and (2) the eviction was interwoven with issues of title that Defendants would not have a clear superior right of possession.

88. Plaintiff requests this Court to also issue injunctive relief during the pendency of this suit.

89. Plaintiff is likely to succeed on the merits of this lawsuit.

### Probable right to relief

90. Defendants unless restrained, will cause Plaintiff to suffer irreparable harm unless the foreclosure subsequent actions by Defendants are enjoined, depriving Plaintiff of the use and enjoyment of the property. Additionally, Plaintiff will lose the right to sell or mortgage the property at some future date and will not obtain full benefit of the appreciated value. Plaintiff will show the Court that there is no remedy at law that is clear and adequate to protect Plaintiffs' property interest against such void foreclosure. This request for injunctive relief is so that justice may be done, not merely for delay. Plaintiff has performed all conditions precedent.

### Attorney's fees

91. Plaintiffs have retained Stephen D. Casey to represent them in this action, and have agreed to pay reasonable and necessary attorney's fees. An award of reasonable and

necessary attorney's fees to the Plaintiff would be equitable and just and therefore authorized by Texas Civil Practice and Remedies Code § 37.009.

Jury demand

92. A jury demand is made at this time and Plaintiffs hereby tender the jury fee.

Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that:

93. Defendants be restrained from following actions subsequent to the foreclosure sale on Plaintiff's property by temporary restraining order without notice;

94. Defendants be cited to appear and show cause, and that upon such hearing, a temporary injunction be issued enjoining defendant, their agents, servants, and employees, from evicting Plaintiff from said property, specifically:

> LOT 11, BLOCK Q, BUCKINGHAM ESTATES PHASE IV, SECTION B, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 84, PAGE 193C, PLAT RECORDS OF TRAVIS COUNTY, TEXAS.

95. the Court set a minimal bond based on affidavit evidence;

96. the Court issue a permanent injunction on final trial on the merits of this cause, permanently enjoining Defendants and their agents, servants, and employees form directly or indirectly foreclosing on the subject property, in any manner;

97. upon final hearing that the Court declares the title quieted in Plaintiff's favor;

98. Plaintiff recover costs of suit, damages for statutory violations, attorney's fees, exemplary damages as allowed by law or statute; and

99. Plaintiff be awarded pre-judgment interest and post-judgment interest as allowed by law.

100. Such other further relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted,

CASEY LAW OFFICE, P.C.

Stephen Casey
Texas Bar No. 24065015

600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
stephen@caseylawoffice.us

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiffs' Original Petition and request for injunctive relief was served upon Defendants by the manner and method indicated below on this day, September 3, 2013.

*Via private process server*

Stephen Casey; *Counsel for Plaintiff*

I certify this to be a true and correct
copy of the original instrument.
Luna & Luna, LLP

By: _____

**Multistate**

## NOTE

FHA Case No.

495 **REDACTED**

November 10, 2009
[Date]

901 Minturn Lane, Austin, TX 78748
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
DHI MORTGAGE COMPANY LTD

and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of one hundred fifty-nine
thousand six hundred forty-five and 00/100

Dollars (U.S. $ 159,645.00           ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of five
percent (           5.000  %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date
as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if
Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
**(A)  Time**
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
January 1           , 2010      . Any principal and interest remaining on the first day of December           ,
2039      , will be due on that date, which is called the "Maturity Date."
**(B)  Place**
Payment shall be made at P.O. Box 911209, Dallas, TX 75391-1209
or at such place as Lender may designate in writing
by notice to Borrower.
**(C)  Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $ 857.01           . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.
**(D)  Allonge to this Note for payment adjustments**
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of
the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of
this Note. [Check applicable box]

☐ Graduated Payment Allonge   ☐ Growing Equity Allonge   ☐ Other [specify]

REDACTED
FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



REDACTED
VMP1R (0809)
Page 1 of 3



## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of four                    percent (              4.000 %) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

REDACTED
FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services

 REDACTED
VMP1R (0809)
Page 2 of 3



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
Patrick Farley                          -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

REDACTED
495-0521104
FHA Multistate Fixed Rate Note
VMP ®
Wolters Kluwer Financial Services



REDACTED
VMPTR (0809)
Page 3 of 3



LandtitleUSA.Com - 0915389-law

**ELECTRONICALLY RECORDED**                 **2009188901**

                                TRV      9      PGS

I certify this to be a true and correct
copy of the original instrument.
                Luna & Luna, LLP

By: _____

Return To:
DHI Mortgage Company
Post Closing Department
12357 Riata Trace Pkwy. Suite
C150
Austin. TX  78727
000742358 112
Prepared By:

---

[Space Above This Line For Recording Data]

**State of Texas**

## DEED OF TRUST

FHA Case No.
495REDACTED

MIN 10002REDACTED

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU
MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM
ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS
FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER
OR YOUR DRIVER'S LICENSE NUMBER.

THIS DEED OF TRUST ("Security Instrument") is made on November 10, 2009
The Grantor is Patrick  Farley. an unmarried man

("Borrower"). The trustee is Randall C Present

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for
Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws
of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel (888)
679-MERS. DHI MORTGAGE COMPANY LTD

REDACTED

Wolters Kluwer Financial Services
    FHA Texas Deed of Trust with MERS - 4/96
VMP®-4N(TX) (0704)            Amended 2/98
Page 1 of 9            Initials:

**REDACTED**

LandtitleUSA Co

LandtitleUSA.Com - 0915389-law

("Lender") is organized and existing under the laws of Texas                                    , and
has an address of 12357 Riata Trace Pkwy, Suite C150
Austin, TX  78727                                . Borrower owes Lender the principal sum of
one hundred fifty-nine thousand six hundred forty-five and 00/100
                                        Dollars (U.S. $159,645.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on December 1, 2039
                    . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the
Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums,
with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance
of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower
irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located
in Travis                                                              County, Texas:
Lot 11, Block Q, Buckingham Estates Phase IV, Section B, according to the Map or
Plat thereof recorded in Volume 84, Page 193C, Plat Records of Travis County,
Texas.

Parcel ID Number:
which has the address of 901 Minturn Lane                              [Street]
Austin                              [City], Texas 78748      [Zip Code] ("Property Address");

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this
Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's
successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right
to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or
canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower
warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants
with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

     Borrower and Lender covenant and agree as follows:
     UNIFORM COVENANTS.

     1. Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and
interest on, the debt evidenced by the Note and late charges due under the Note.

REDACTED                                                    REDACTED
                                                           Initials:

VMP®-4N(TX) (0704)                     Page 2 of 9

LandtitleUSA.Com - 0915389-law

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

REDACTED                                              REDACTED

Initials:

VMP®-4N(TX) (0704)                          Page 3 of 9

LandtitleUSA.Com - 0915389-law

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

**REDACTED**

VMP ®-4N(TX) (0704)

Initials:  **REDACTED**

LandtitleUSA.Com - 0915389-law

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**REDACTED**                                                    **REDACTED**

LandtitleUSA.Com - 0915389-law

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

 **REDACTED**

 **REDACTED**

Initials: ___

LandtitleUSA.Com - 0915389-law

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public venue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 18, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**22. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider     ☐ Growing Equity Rider     ☐ Other [specify]
☐ Planned Unit Development Rider     ☐ Graduated Payment Rider

 

Initials: _____

VMP®-4N(TX) (0704)

LandtitleUSA.Com - 0915389-law

**24. Purchase Money; Vendor's Lien; Renewal and Extension. [Complete as appropriate]**

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____                    _____(Seal)
                                                    Patrick Farley                    -Borrower


_____                    _____(Seal)
                                                                                      -Borrower


_____(Seal)            _____(Seal)
                            -Borrower                                                 -Borrower


_____(Seal)            _____(Seal)
                            -Borrower                                                 -Borrower


_____(Seal)            _____(Seal)
                            -Borrower                                                 -Borrower


 

VMP-6N(TX)(0704)                    Page 8 of 9

LandtitleUSA.Com - 0915389-law

**STATE OF TEXAS**
County of Bexar

Before me                                         on this day personally appeared
Patrick Farley

known to me (or proved to me on the oath of
or through    TX  DL                                      ) to be the person whose name is
subscribed to the foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes
and consideration therein expressed.

Given under my hand and seal of office this  10TH    day of Nov         . 2009



Notary Public

**REDACTED**

VMP®-4N(TX) (0704)                      Page 9 of 9                      **REDACTED**

Initials:

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS



DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
November 12 2009 11:36 AM
FEE: $  48.00   2009188901

# Exhibit A3

DC          BK13255 PG215

NOTICE SENT: FINAL  INTERLOCUTORY  NONE
DISP PARTIES:_____
DISP CODE: CVD / CLS
REDACT PGS:_____
JUDGE _GJS_ CLERK _BD_          No. D-1-GN-13- 003076

Filed in The District Court
of Travis County, Texas

SEP 03 2013 BD

At _____ 10: 36 A.M.
Amalia Rodriguez-Mendoza, Clerk

Patrick Farley,
*Plaintiff ,*

vs.

**DHI Mortgage Company, Ltd.; Merscorp
Holdings, Inc.; Mortgage Electronic
Registration Systems, Inc.; Swarupa Slee;
Melanie Cowan; Juanita Strickland;
Bank of America, N.A.; Recontrust
Company, N.A.; Armando Chavez;
Angela Carter; Core Logic Document
Solutions; and Mercedes Judilla;**
*Defendants.*

In the 200th District Court
Travis County, Texas

**Temporary Restraining Order**

BE IT REMEMBERED, before the Honorable 24th District Court:

1. The Court finds, after hearing the party's arguments, grounds for issuance of this

TEMPORARY RESTRAINING ORDER to stop the foreclosure sale and any eviction for

the following residence:

901 Minturn Lane, Austin, Texas 78748.

2. Sufficient grounds, as described under Texas Civil Practices and Remedies Code

Section 65.011 (1) (prejudicial act); 65.011 (2) (a futile act); 65.011 (3) (principles of equity);

and (4) (cloud on title). Plaintiffs will suffer irreparable harm by eviction from their home

if it is not restrained .

3. Any agents of Defendants are also enjoined from these actions

3. This TEMPORARY RESTRAINING ORDER is issued on the 3rd of September, 2013, at

_10 am_ pm and runs for a period of 14 days, until _Sept 17 2013_

4. A hearing for the temporary injunction is set for _Sept 17, 2013_ at _2_

am/pm.

5. Bond amount is _$0_ see papers affidavit

It is so ORDERED, this September 3, 2013.

Hon. Judge, Presiding
9-3-13 @ 10 A.M.

TRO - FARLEY – PAGE 1 OF 1


POSTED

# Exhibit A4

Filed
13 September 11 P3:56
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-13-003076

CAUSE NO. D-1-GN-13-003076

| | | |
|---|---|---|
| PATRICK FARLEY, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| DHI MORTGAGE COMPANY, LTD., ET | § | |
| AL., | § | |
| | § | 200TH JUDICIAL DISTRICT |
| Defendants. | | |

## DEFENDANTS BANK OF AMERICA, N.A., RECONTRUST COMPANY, N.A. AND MERSCORP HOLDINGS, INC. AND MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.'S ORIGINAL ANSWER

Defendants Bank of America, N.A., ReconTrust Company, N.A., Merscorp Holdings, Inc. and Mortgage Electronic Registration Systems, Inc. (collectively the "Defendants") file this Original Answer to the Original Petition of plaintiff Patrick Farley (the "Plaintiff"), and would respectfully show unto the Court the following:

### I.

#### GENERAL DENIAL

1.    Pursuant to Rule 92 of the Texas Rules of Civil Procedure Defendants generally deny all of the claims as alleged by Plaintiff and respectfully pray that Plaintiff be required to prove his claims as alleged by a preponderance of the evidence or such higher standard as may be applicable.

### II.

#### AFFIRMATIVE AND OTHER DEFENSES

2.    Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver and/or estoppel.

136045.15224/12344421v.1

3.    Plaintiff's claims are barred, in whole or in part, by his failure to perform conditions precedent.

4.    Plaintiff's claims are barred, in whole or in part, by his prior material breach of the terms of his promissory note and deed of trust.

5.    Plaintiff's claims are barred, in whole or in part, by the economic loss rule.

6.    Plaintiff's claims are barred, in whole or in part, by the statute of frauds.

7.    Plaintiff's damages, if any, were the direct and proximate result of his own conduct, acts and omissions.

8.    Plaintiff's claims fail, in whole or in part, based on the clear, unambiguous language of his loan documents.

9.    Plaintiff is not entitled to declaratory relief because no justiciable controversy exists.

10.    Plaintiff is not entitled to equitable relief because he has unclean hands and has therefore failed to do equity.

11.    Plaintiff is not entitled to injunctive relief because he has not alleged a viable substantive cause of action that would support entry of judgment.

12.    Plaintiff's "void foreclosure" claim fails because there has been no foreclosure sale and Plaintiff retains exclusive possession of the property.

13.    Plaintiff's request for attorney's fees fails because he has not alleged a viable cause of action that would support such an award.

### III.
### ATTORNEY'S FEES AND COSTS

Defendants seek recovery of all reasonable and necessary attorney's fees and recoverable court costs incurred in defending this action as expressly provided by the terms of the Plaintiff's

2

promissory note and Deed of Trust. *MBM Fin. Corp. v. The Woodlands Operating Co.,* 292 S.W.3d 660, 669 (Tex. 2009) (stating that attorney fees are recoverable if provided by contract or statute).

WHEREFORE, Defendants respectfully pray that Plaintiff take nothing by way of his claims, that the Court render judgment in favor of Defendants, that Defendants recover all reasonable and necessary attorney's fees and costs incurred in this suit, and for such other and further relief, at law or in equity, to which the Court deems Defendants justly entitled.

Respectfully submitted,

By:    /s/ Joshua A. Huber
       Joshua A. Huber
       Texas Bar No. 24065457
       BLANK ROME LLP
       700 Louisiana, Suite 4000
       Houston, Texas 77002-2727
       Telephone: (713) 632-8640
       Facsimile:  (713) 228-6605
       jhuber@blankrome.com

**Of Counsel:**
Blank Rome LLP
700 Louisiana, Suite 4000
Houston, Texas 77002-2727
Telephone: (713) 228-6601
Facsimile:  (713) 228-6605

**ATTORNEY FOR DEFENDANTS**

3

136045.15224/12344421v.1

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2013, a true and correct copy of the foregoing and/or attached instrument was served on all parties of record pursuant to the Texas Rules of Civil Procedure as indicated below:

Stephen Casey
CASEY LAW OFFICE, P.C.
6200 Savoy, Suite 1150
Houston, Texas 77036
*Via CM/ RRR No.7011 0470 0003 0560 8765*

*/s/ Joshua A. Huber*
Joshua A. Huber

4

136045.15224/12344421v.1

# Exhibit A5



600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681

**CASEY**
Law Office, P.C.

Filed
13 September 11 P2:09
Amalia Rodriguez-Mendoza
District Clerk
Travis District
D-1-GN-13-003076
Phone: 512.237.1324
Fax: 512.853.4098

Professional Excellence with a Personal Approach

September 11, 2013

Travis County District Clerk
1000 Guadalupe Street
Austin, Texas 78701

RE: Cause # D-1-GN-13-003076; Farley v. DHI, et al.

Please prepare a writ/citation for the TRO associated with this case as requested yesterday via ProDoc eFiling. We need one prepared for each of the 12 defendants listed in the Original Petition.

Please email them to Tod with Direct Results for service.

Thank you,

Bernie Flores

Filed In The District Court
of Travis County, Texas

SEP 0 3 2013   BD

At _____ 10:36 A.M.
Amalia Rodriguez-Mendoza, Clerk

No. D-1-GN-13-003076

Patrick Farley,
*Plaintiff* ,

vs.

DHI Mortgage Company, Ltd.; Merscorp
Holdings, Inc.; Mortgage Electronic
Registration Systems, Inc.; Swarupa Slee;
Melanie Cowan; Juanita Strickland;
Bank of America, N.A.; Recontrust
Company, N.A.; Armando Chavez;
Angela Carter; Core Logic Document
Solutions; and Mercedes Judilla;
*Defendants.*

In the 200th District Court
Travis County, Texas

**Temporary Restraining Order**

BE IT REMEMBERED, before the Honorable 74th District Court:

1. The Court finds, after hearing the party's arguments, grounds for issuance of this TEMPORARY RESTRAINING ORDER to stop the foreclosure sale and any eviction for the following residence:

    901 Minturn Lane, Austin, Texas 78748.

2. Sufficient grounds, as described under Texas Civil Practices and Remedies Code Section 65.011 (1) (prejudicial act); 65.011 (2) (a futile act); 65.011 (3) (principles of equity); and (4) (cloud on title). Plaintiffs will suffer irreparable harm by eviction from their home if it is not restrained .

3. Any agents of Defendants are also enjoined from these actions

3. This TEMPORARY RESTRAINING ORDER is issued on the 3rd of September, 2013, at
____10___ pm and runs for a period of 14 days, until _Sept 17 2013_

4. A hearing for the temporary injunction is set for _Sept 17, 2013_ at _2_ am/pm.

5. Bond amount is __0__ see papers affidav.t

It is so ORDERED, this September 3, 2013.

Hon. Judge, Presiding

9-3-13 e 10 A.M.



# Exhibit B

Travis CAD

## Property Search Results > 343946 FARLEY PATRICK for Year 2013

### Property

**Account**

| | | | |
|---|---|---|---|
| Property ID: | 343946 | Legal Description: | LOT 11 BLK Q BUCKINGHAM ESTATES PHS IV SEC B |
| Geographic ID: | 0428130204 | Agent Code: | |
| Type: | Real | | |
| Property Use Code: | | | |
| Property Use Description: | | | |

**Location**

| | | | |
|---|---|---|---|
| Address: | 901 MINTURN LN TX 78748 | Mapsco: | 673L |
| Neighborhood: | J0840 | Map ID: | 043118 |
| Neighborhood CD: | J0840 | | |

**Owner**

| | | | |
|---|---|---|---|
| Name: | FARLEY PATRICK | Owner ID: | 1457993 |
| Mailing Address: | | % Ownership: | 100.0000000000% |
| | 901 MINTURN LN | | |
| | AUSTIN , TX 78748-6405 | | |
| | | Exemptions: | |

### Values

| | | | |
|---|---|---|---|
| (+) Improvement Homesite Value: | + | $0 | |
| (+) Improvement Non-Homesite Value: | + | $119,865 | |
| (+) Land Homesite Value: | + | $0 | |
| (+) Land Non-Homesite Value: | + | $50,000 | Ag / Timber Use Value |
| (+) Agricultural Market Valuation: | + | $0 | $0 |
| (+) Timber Market Valuation: | + | $0 | $0 |
| | | ------------------------ | |
| (=) Market Value: | = | $169,865 | |
| (–) Ag or Timber Use Value Reduction: | – | $0 | |
| | | ------------------------ | |
| (=) Appraised Value: | = | $169,865 | |
| (–) HS Cap: | – | $0 | |
| | | ------------------------ | |
| (=) Assessed Value: | = | $169,865 | |

### Taxing Jurisdiction

Owner:       FARLEY PATRICK
% Ownership: 100.0000000000%
Total Value:   $169,865

| Entity | Description | Tax Rate | Appraised Value | Taxable Value | Estimated Tax |
|---|---|---|---|---|---|
| 01 | AUSTIN ISD | 1.242000 | $169,865 | $169,865 | $2,109.72 |
| 02 | CITY OF AUSTIN | 0.502900 | $169,865 | $169,865 | $854.25 |
| 03 | TRAVIS COUNTY | 0.500100 | $169,865 | $169,865 | $849.49 |
| 0A | TRAVIS CENTRAL APP DIST | 0.000000 | $169,865 | $169,865 | $0.00 |
| 2J | TRAVIS COUNTY HEALTHCARE DISTRICT | 0.078946 | $169,865 | $169,865 | $134.10 |
| 68 | AUSTIN COMM COLL DIST | 0.095100 | $169,865 | $169,865 | $161.54 |
| | Total Tax Rate: | 2.419046 | | | |

|  |  |
|---|---|
| Taxes w/Current Exemptions: | $4,109.10 |
| Taxes w/o Exemptions: | $4,109.11 |

## Improvement / Building

**Improvement #1:**    1 FAM DWELLING  **State Code:**    A1    **Living Area:**    1968.0 sqft  **Value:**    $119,865

| Type | Description | Class CD | Exterior Wall | Year Built | SQFT |
|------|-------------|----------|---------------|------------|------|
| 1ST | 1st Floor | WV - 4 | | 1995 | 778.0 |
| 2ND | 2nd Floor | WW - 4 | | 1995 | 1190.0 |
| 011 | PORCH OPEN 1ST F | * - 4 | | 1995 | 12.0 |
| 041 | GARAGE ATT 1ST F | WV - 4 | | 1995 | 400.0 |
| 095 | HVAC RESIDENTIAL | * - * | | 1995 | 1968.0 |
| 251 | BATHROOM | * - * | | 1995 | 2.5 |
| 522 | FIREPLACE | * - 4 | | 1995 | 1.0 |
| 612 | TERRACE UNCOVERD | * - 4 | | 1995 | 36.0 |

## Land

| # | Type | Description | Acres | Sqft | Eff Front | Eff Depth | Market Value | Prod. Value |
|---|------|-------------|-------|------|-----------|-----------|--------------|-------------|
| 1 | LAND | Land | 0.1059 | 4612.21 | 45.00 | 100.00 | $50,000 | $0 |

## Roll Value History

| Year | Improvements | Land Market | Ag Valuation | Appraised | HS Cap | Assessed |
|------|--------------|-------------|--------------|-----------|--------|----------|
| 2014 | N/A | N/A | N/A | N/A | N/A | N/A |
| 2013 | $119,865 | $50,000 | 0 | 169,865 | $0 | $169,865 |
| 2012 | $118,883 | $50,000 | 0 | 168,883 | $0 | $168,883 |
| 2011 | $138,545 | $50,000 | 0 | 188,545 | $0 | $188,545 |
| 2010 | $141,044 | $50,000 | 0 | 191,044 | $0 | $191,044 |
| 2009 | $150,916 | $50,000 | 0 | 200,916 | $0 | $200,916 |

## Deed History - (Last 3 Deed Transactions)

| # | Deed Date | Type | Description | Grantor | Grantee | Volume | Page | Deed Number |
|---|-----------|------|-------------|---------|---------|--------|------|-------------|
| 1 | 11/10/2009 | SW | SPECIAL WARRANTY DEED | SECRETARY OF HOUSING & URBAN DEVELOPMENT | FARLEY PATRICK | | | 2009188900TR |
| 2 | 7/14/2009 | WD | WARRANTY DEED | WELLS FARGO BANK NA | SECRETARY OF HOUSING & URBAN DEVELOPMENT | | | 2009141196TR |
| 3 | 7/7/2009 | ST | SUBSTITUTE TRUSTEE DEED | MORRIS ROBERT | WELLS FARGO BANK NA | | | 2009118704TR |

### Questions Please Call (512) 834-9317

This site requires cookies to be enabled in your browser settings.

Website version: 1.2.2.3    Database last updated on: 9/16/2013 3:39 AM    © 2013 True Automation, Inc. All Rights Reserved. Privacy Notice

This site only supports Internet Explorer 6+, Netscape 7+ and Firefox 1.5+.

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| PATRICK FARLEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| DHI MORTGAGE COMPANY, LTD., | § | |
| MERSCORP HOLDINGS, INC., | § | |
| MORTGAGE ELECTRONIC | § | |
| REGISTRATIONS SYSTEMS, INC., | § | Civil Action No. ___1:13-cv-820___ |
| SWARUPA SLEE, MELANIE COWAN, | § | |
| JUANITA STRICKLAND, BANK OF | § | |
| AMERICA, N.A., RECONTRUST | § | |
| COMPANY, N.A., ARMANDO CHAVEZ, | § | |
| ANGELA CARTER, CORE LOGIC | § | |
| DOCUMENT SOLUTIONS AND | § | |
| MERCEDES JUDILLA, | § | |
| | § | |
| Defendants. | § | |

## COUNSEL OF RECORD

Defendant files this list of all known counsel of record in connection with the Removal of

this action:

Stephen Casey
Casey Law Office, P.C.
600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
Telephone: 512-257-1324
Fax: 512-853-4098
Texas Bar No. 24065015
stephen@caseylawoffice.us

Joshua A. Huber
Texas Bar No. 24065457
Federal Bar No. 1001404
BLANK ROME LLP
700 Louisiana Street, Suite 4000
Houston, Texas 77002-2727
Telephone: (713) 228-6601
Facsimile:  (713) 228-6605
jhuber@blankrome.com

**ATTORNEY FOR PLAINTIFF**

**ATTORNEY FOR DEFENDANTS**

Page 1 of 2

136045.61876/12346680v.1

## CERTIFICATE OF SERVICE

I certify that on September 16, 2013, a true and correct copy of the foregoing and/or attached instrument was sent to the District Clerk of Travis County, Texas, and that notice was served on all parties of record pursuant to the Federal Rules of Civil Procedure, as indicated below:

Stephen Casey
CASEY LAW OFFICE, P.C.
600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
*Via CM RRR No. 7011 0470 0003 0560 8789*

/s/ Joshua A. Huber
Joshua A. Huber

136045.61876/12346680v.1

# Exhibit D

**Cause No. D-1-GN-13-003076**

| | | |
|---|---|---|
| PATRICK FARLEY, | § | IN THE DISTRICT COURT |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | TRAVIS COUNTY, TEXAS |
| | § | |
| DHI MORTGAGE COMPANY, LTD., | § | |
| ET AL., | § | |
| | § | |
| **Defendants.** | § | 200TH JUDICIAL DISTRICT |

## NOTICE OF REMOVAL OF STATE COURT ACTION

TO:   Plaintiff, Patrick Farley, by and through his attorney of record, Stephen Casey, CASEY LAW OFFICE, P.C., 600 Round Rock West Drive, Suite 602, Round Rock, Texas 78681

PLEASE TAKE NOTICE that the Defendants pursuant to applicable law, filed with the Clerk of the United States District Court for the Western District of Texas, Austin Division, a Notice of Removal, a copy of which is attached to and filed with this document, and that this action is removed to the United States District Court as of September 16, 2013. This Court is respectfully requested to proceed with no further action in this case.

Respectfully submitted,

By:   __/s/ Joshua A. Huber_____
Joshua A. Huber
Texas Bar No. 24065457
Federal Bar No. 1001404
BLANK ROME LLP
700 Louisiana, Suite 4000
Houston, Texas 77002-2727
Telephone: (713) 632-8640
Facsimile:   (713) 228-6605
jhuber@blankrome.com

**ATTORNEY FOR DEFENDANTS**

**Of Counsel:**
Blank Rome LLP
700 Louisiana, Suite 4000
Houston, Texas 77002-2727
Telephone: (713) 228-6601
Facsimile:   (713) 228-6605

136045.61876/12346684v.1

## Certificate of Service

On September 16, 2013, I certify that a copy of the foregoing and/or attached instrument was served upon all parties of record pursuant to the Texas Rules of Civil Procedure as indicated below:

Stephen Casey
CASEY LAW OFFICE, P.C.
600 Round Rock West Drive, Suite 602
Round Rock, Texas 78681
*Via CM RRR No. 7011 0470 0003 0560 8789*


_/s/ Joshua A. Huber_____
Joshua A. Huber

136045.61876/12346684v.1